IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-60-RJ

LYDELL M. CARTER, SR.,

    Plaintiff/Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, -27] pursuant to Fed. R. Civ. P. 12(c). Claimant filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this Order.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for SSI on August 5, 2012, and an application for a period of disability and DIB on January 14, 2013, alleging disability beginning July 1, 2011. (R. 203–206). Her claims were denied initially and upon reconsideration. (R. 89–146). A hearing before the Administrative Law Judge ("ALJ") was held on June 4, 2015, at which

Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 44-88). On July 14, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 23-43). On December 1, 2016, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

2

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to perform a function-by-function analysis; (2) failure to properly evaluate Claimant's pain and its impact on

3

his ability to maintain positions; (3) improper assessment of Claimant's mental impairments in fashioning the residual functional capacity ("RFC"); and (4) failure to give proper weight to a treating physician's medical opinion. Pl.'s Mem. [DE-21] at 1–2.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 28). Next, the ALJ determined Claimant had the following severe impairments: dermatofibrosarcoma, obesity, obstructive sleep apnea, hypertension, degenerative disc disease, psoriasis, osteoarthritis, anxiety, and depression. (R. 28–29). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29–30). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild restriction in activities of daily living and social functioning, and moderate difficulties with regard to concentration, persistence, or pace, with no episodes of decompensation. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that Claimant had the ability to perform sedentary work[1] with the following restrictions:

> [H]e can stand and walk two hours and sit six hours in an eight hour workday. The claimant can lift, carry, push, and pull ten pounds occasionally and twenty pounds frequently. He can occasionally balance and climb stairs, but he can never climb ladders. He can occasionally stoop, crouch, crawl, and kneel. He cannot

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

work at heights or around dangerous machinery. Mentally, the claimant can perform simple, routine, and repetitive tasks meaning that he can apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations.

(R. 30–36). In making this assessment, the ALJ found Claimant's statements about his limitations were not entirely credible. (R. 32). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as an auto mechanic helper, pharmaceutical operator, and automobile parts driver or parts clerk. (R. 36). At step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 37).

## V. DISCUSSION

### A. The ALJ's RFC Determination

Claimant contends the ALJ erred in formulating the RFC, including improperly evaluating the opinion evidence of a treating physician, not performing a function-by-function analysis to address Claimant's need to change positions, not evaluating Claimant's pain with respect to his need to change positions, and limiting Claimant only to "simple, routine, repetitive tasks" to address his moderate difficulties with respect to concentration, persistence or pace. Pl.'s Mem. [DE-21] at 1.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the

5

regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Opinion Evidence

Claimant contends the ALJ erred in affording "minimal, not controlling weight" to the opinion of Dr. Cara Davis, Claimant's treating physician. Pl.'s Mem. [DE-21] at 14–16. The Commissioner counters that the ALJ properly evaluated the opinion, applying the appropriate

6

regulatory factors, and sufficiently articulated his determination. Def.'s Mem. [DE-28] at 10–12.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating source such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 9602p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2,

7

1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant testified that Dr. Davis has been treating him since 2004, and that he would see Dr. Davis regularly whenever he had insurance. (R. 68). Even when Claimant did not have insurance, Claimant would "scrape" money together in order to continue to see Dr. Davis every six months. *Id.* On January 20, 2015, Dr. Davis completed a medical source statement, diagnosing Claimant with dermatofibrosarcoma, low back pain, depression, sleep apnea, and arthritis that cause pain, weakness, and limitations in his ability to bend, squat, sit, stand, and lift. (R. 574). Dr. Davis opined that Claimant had not been capable of sustained sedentary or light exertional activity on a continuous basis, and that Claimant was severely limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, complete a normal workday and workweek without interruptions from medically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 571–74).

The ALJ evaluated Dr. Davis' opinions as follows:

> Considering the foregoing criteria and based on the evidence already described, the undersigned does not accord controlling weight to the opinion of Dr. Davis. The listed impairments provided by Dr. Davis are consistent with the record. However, the limitations assessed by Dr. Davis are not consistent with the medical record or her own treatment notes. She seems to think that the claimant has a malignant cancer in his leg that will require amputation. Moreover, she suggests that a significant amount of muscle tissue was removed from his leg.

---

[2]  Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

> These opinions are not consistent with the surgery records and treatment by the oncologist. Further, the physical limitations appear to be largely based on the reports of the claimant provided elsewhere within the record. Most significantly, the claimant recently reported that he was working part time and testified that he would be employed if he could find work that accommodated his limitations. Additionally, the mental limitations included in the opinion are beyond the scope of Dr. Davis'[] expertise. She simply prescribed the claimant Xanax; she is not a mental health professional. The undersigned notes that the claimant's credible limitations have been accounted for in the residual functional capacity assessed herein, and the vocational expert testified that there were jobs in the local and national economy that the claimant would perform. For the foregoing reasons, the undersigned accords minimal, not controlling weight to the opinion of Dr. Davis.

(R. 34). The ALJ summarily relies on five reasons to discount Claimant's treating physician's opinion: (1) Dr. Davis' mistaken belief that Claimant has malignant cancer; (2) Dr. Davis' mistaken belief that a significant amount of muscle tissue was removed from Claimant's leg; (3) Dr. Davis' reliance on Claimant's subjective reports; (4) Claimant's attempts at, and desire to, work part time; and (5) Dr. Davis' inability to assess Claimant's mental limitations because Dr. Davis is not a mental health professional. Nowhere in his explanation however does the ALJ specifically cite treatment records that contradict Dr. Davis' opinion. The court will address the sufficiency of these reasons in turn.

First, Claimant explains that, in 2012, it appeared Claimant may have developed a new cancerous tumor that would require more surgery. Pl.'s Mem. [DE-21] at 15. However, an MRI performed in 2014 showed that the cancer had not recurred. *Id.* Seemingly, this is the basis for the ALJ's statement that Dr. Davis' opinion should be discounted because Dr. Davis believed Claimant had malignant cancer in his leg that would require amputation. However, the ALJ does not cite the record for this proposition, nor can the court find where in the record Dr. Davis expressed her opinion that Claimant's leg would need amputating. Further, Dr. Davis' medical source statement does not state or rely on her belief that Claimant's leg would require

9

amputation, presumably because the 2014 MRI dispelled this notion prior to the issuance of her opinion in 2015. As such, the court finds that the ALJ's first reason for discounting the treating physician's opinion is insufficient and unsupported by the record.

Second, Claimant argues that the ALJ was mistaken in his understanding of the record, where Claimant did in fact have a significant amount of muscle tissue removed from his leg during surgery to address his dermatofibrosarcoma. *Id.* (citing R. 408) ("The biceps femoris[3] was elevated and a generous resection of this muscle was carried out with clinically clear margins"). Therefore, the court finds that the ALJ's second reason for discounting the treating physician's opinion is unsupported by the medical evidence of record and thus is an insufficient basis for discounting a treating physician's opinion.

Third, the record includes extensive regular treatment records from Dr. Davis, as well as lab and test results that span several years. (R. 384–86, 417–25, 435–56, 517–43, 555, 556–64). Therefore, it is unclear to the court how the ALJ reasoned that Dr. Davis' opinion was based solely on Claimant's subjective reporting, and not on the years of treatment and testing that Claimant has undergone in Dr. Davis' care. Accordingly, his third reason is insufficient to discount Dr. Davis' opinion as Claimant's treating physician since 2004.

Fourth, Claimant argues that his testimony and wage records "clearly document[] [that] Mr. Carter tried his best to continue working following surgery, seeking increasingly light jobs, but was unable to sustain the work activity at full time levels," and "[t]he fact that a claimant would try to avoid going on disability does not disprove disability." Pl.'s Mem. [DE-21] at 15 (citing *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015) ("a claimant's desire to work is not inconsistent with her inability to work because of a disability")). The court agrees and finds that

---

[3] The biceps femoris is one of the posterior femoral muscles and lies on the posterior, lateral side of the thigh. https://medical-dictionary.freedictionary.com.

10

the fact that Claimant had a desire to work and attempted to find suitable work is not a proper reason for the ALJ to discount the treating physician's opinion regarding the severity of Claimant's impairments. *See Faust v. Colvin*, No. 5:13-CV-364-FL, 2014 WL 4636968, at *7 (E.D.N.C. June 13, 2014) (concluding that the ALJ's reliance on the claimant's continued employment was not sufficient evidence on which to discount the treating physician's opinions because claimant's employment was "not necessarily inconsistent with the opinions provided by the treating physicians regarding Claimant's disability" and the claimant's "attempts at continuing to work during the time period of the instant opinions was severely impeded by her impairments[.]"), *adopted by* 2014 WL 4636988 (E.D.N.C. Sept. 16, 2014).

Lastly, the ALJ's fifth reason is meritorious. 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5) provide that a specialist's opinion is entitled to greater weight than a general practitioner, and *Johnson* provides that the court should consider whether a doctor is a specialist in weighing a medical opinion. 434 F. 3d at 654. Accordingly, it is proper for the ALJ to cite the fact that Dr. Davis is not a specialist in the field of mental health in order to discount her opinion regarding Claimant's mental impairments. *See Perdue v. Comm'r, Soc. Sec. Admin.*, CIV. SAG-11-3408, 2013 WL 1942160, at *2 (D. Md. May 7, 2013) (finding that ALJ could assign little weight to family practitioner's opinion regarding claimant's mental capacity where doctor had "no specialization in mental health fields."). However, Dr. Davis' status as a specialist is only one factor in the analysis, and the court finds that this alone is not enough to discount the opinion as a whole, particularly with respect to Claimant's physical impairments. Therefore, the court finds that the reasons provided by the ALJ to support his decision to accord minimal and not controlling weight to the treating physician's opinion do not constitute substantial evidence.

Contrary to the ALJ's rationale, there is evidence in the record consistent with Dr. Davis'

opinion. Claimant has been prescribed Percocet for pain management and Xanax to manage his anxiety. (R. 408, 596). In December 2012, Claimant presented with a 3-4 centimeter mass on his right chest wall, poor flexion in his lumbar spine, could not squat, and had poor hand grip and stiff finger movement. (R. 526). In June 2013, Claimant presented with "new pain in the leg in the location of his cancer," "worsening fatigue," and "very stressed." (R. 525). In December 2013, Dr. Davis noted as objective findings: pain and reduced range of motion in the right hip, mass on the right lateral neck, cannot stand for more than a few minutes, cannot sit for more than 10 minutes, has to use stability device for walking and that is limited to 25 feet, and poor back flexion and extension. (R. 561). In July 2014, Dr. Davis made objective findings that Claimant had poor focus, his gait was unstable without support, and his hand grip was poor. (R. 563). Claimant reported that he worked 20 hours a week at a restaurant but could not work regularly, could only walk 15 minutes and then had to sit, could only sit 30 minutes and then had to stand or lay down, could only stand 15 minutes then must sit, could not lift more than 20 pounds without walking, could not lift and carry more than 15 pounds, arthritis in joints was worsening, and he planned to stop taking Xanax and Percocet because they made him sleepy. *Id.* Accordingly, because the ALJ failed to cite substantial evidence when discussing the treating physician's opinion and there is evidence in the record consistent with the opinion, remand is appropriate.

The issues raised in Claimant's remaining assertions of error—failure to conduct a proper function-by-function analysis of Claimant's need for changing positions, failure to properly evaluate Claimant's pain and its impact on his ability to maintain positions, and failure to properly account for Claimant's limitation in concentration, persistence, or pace with a simple, routine, repetitive task limitation—may be impacted by the ALJ's further consideration of the

12

treating physician's opinion. Accordingly, it is recommended that these issues receive additional consideration on remand, as necessary. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by* 2012 WL 3580054 (E.D.N.C. Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-20] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-27] is DENIED, and the case is REMANDED for further proceedings consistent with this order.

So ordered the 6th day of February 2018.

Robert B. Jones, Jr.
United States Magistrate Judge